IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUILLERMO RODRIGUEZ GARCIA,

      Petitioner,

v.                                      No. 2:24-cv-00115 KG/LF
                                      No. 2:22-cr-01125 KG/LF

UNITED STATES OF AMERICA,

      Respondent.

MEMORANDUM OPINION AND ORDER

      This matter comes before the Court upon Guillermo Rodriguez Garcia's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.   (Doc. 1) (Motion).[1]   Petitioner is a federal prisoner and proceeding *pro se.*   He asks the Court to vacate his conviction for production of child pornography based on ineffective assistance of counsel and prosecutorial misconduct.   The United States responded (Doc. 9), and Mr. Garcia filed a reply (Doc. 10).   Upon permission from the Court, the United States filed a supplemental response as Mr. Garcia raised additional ineffective assistance of counsel claims in his reply.   (Doc. 16).   Mr. Garcia was given the opportunity to file a supplemental reply (Doc. 17), however, no additional briefings have been submitted and the time for doing so has well passed.   Having reviewed the record, the supplemental materials filed by the United States, and the relevant law, the Court will dismiss Mr. Garcia's Motion and deny a certificate of appealability.

---

[1] Citations to (Doc. __) are to documents filed in the Civil Case No. 2:24-cv-115, and citations to (Cr. Doc. __) are to documents filed in the Criminal Case No. 2:22-cr-1125.

I.    Background

On October 13, 2020, officers with the Deming Police Department interviewed Mr. Garcia after his adopted daughter, a minor child, reported an incident of inappropriate sexual contact.   (Cr. Doc. 1) at 3-4 (Complaint).   Mr. Garcia admitted he had sexually abused the reporting minor on numerous occasions, in addition to a second minor victim, his biological daughter.   *Id.*   The sexual contact began when both minors were 10 years of age.   *Id.* at 4.

On January 26, 2021, Mr. Garcia was arrested on state charges for criminal sexual penetration in the first degree of a child under 13 years of age, criminal sexual contact of a minor in the second degree, and incest.   *Id.* at 5.   Subsequent to his arrest, the Department of Homeland Security Investigations received a forensic examination report of Mr. Garcia's seized cell phone, which revealed two videos and three photographs depicting child pornography.   *Id.* On February 23, 2022, a federal arrest warrant was executed.   *Id.* at 6.   On March 3, 2022, his state charges were dismissed in favor of federal prosecution.   *Id.*

On July 6, 2022, Mr. Garcia pleaded guilty to one count of Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), and 2256(2)(A), pursuant to a plea agreement.   (Cr. Doc. 25) (Plea Agreement).   At his change of plea hearing, upon the Court's direction, the Government advised Mr. Garcia that he was facing "a mandatory minimum of 15 years and up to 30 years imprisonment," and a five year to life term of supervised release.   (Doc. 16-2) at 3 (Uncertified Transcript) (Gov't Ex. 2).   The Court asked whether he understood the maximum penalties, and he answered in the affirmative.   *Id.* at 4.   He confirmed that his attorney explained the terms and conditions of the plea agreement to his satisfaction, he was confident he understood the agreement, and declined to ask questions when given the opportunity to do so.   *Id.*

at 4-5.  Mr. Garcia affirmed that no one had made any promises to him to encourage him to plead guilty, other than those directly contained in the plea agreement.  *Id.* at 5.  His attorney represented to the Court, without any protest from Mr. Garcia, that he understood the rights he was giving up by pleading guilty, "including the mandatory minimum sentence and possible maximum."  *Id.* at 5-6.  Mr. Garcia confirmed his understanding that the Court could impose a sentence "harsher or longer" than any estimate his attorney articulated to him.  *Id.* at 7.  The Court accepted his plea of guilty after finding it to be made knowingly and voluntarily.  *Id.* at 9.

Subsequent to the plea hearing, the United States Probation Office issued a Presentence Investigation Report (PSR).[2]  (CR Doc. 33).  The PSR assessed Mr. Garcia's offense level at 45 with a criminal history category of I, resulting in a guideline imprisonment range of 360 months to life.  *Id.* at 17.  However, because the statutorily authorized maximum sentence is 30 years, his guideline range became 360 months.  *Id.*  The Government filed a sentencing memorandum seeking the Court to impose a guideline sentence of 360 months or 30 years.  (Cr. Doc. 34).  Mr. Garcia's counsel submitted a sentencing memorandum asking for a below-guideline sentence of 180 months or 15 years.  (Cr. Doc. 36).  On February 1, 2023, Mr. Garcia was sentenced to a total term of 360 months imprisonment and a life term of supervised release.  (Cr. Doc. 39) (Judgment).  He did not appeal.

Mr. Garcia timely filed the instant Motion pursuant to Section 2255.  (Doc. 1).  In claim one, he contends his counsel was ineffective for: (1) failing to "go over the discovery in this

---

[2] The first PSR was disclosed on August 29, 2022.  (Cr. Doc. 29).  The Government made an informal objection to the PSR because it incorrectly indicated that Mr. Garcia did not reduce his exposure to incarceration by entering the plea agreement.  (Cr. Doc. 33) at 1.  The Government asserted that he did, in fact, reduce his exposure because the agreement prevented the prosecution from bringing a second production of child pornography charge.  *Id.*  The U.S. Probation Office agreed and a second PSR was disclosed on January 9, 2023.  (Cr. Doc. 33) at 2-20.

case" with him; (2) incorrectly informing him that he would receive the minimum mandatory sentence of 15 years; (3) neglecting to discuss the PSR with him or inquire whether he had any objections; and (4) declining to object to the Government's recommendation for a 30-year sentence. *Id.* at 4. In claim two, he asserts prosecutorial misconduct, arguing the Government failed to seek an agreed upon 15-year sentence. *Id.* at 5.

The Government filed a response to Mr. Garcia's motion, arguing the grounds for relief were meritless, and the prosecutorial misconduct claim was barred by the collateral attack waiver in his plea agreement. (Doc. 9). Mr. Garcia submitted a reply, in which he raised three additional ineffective assistance of counsel claims: (1) failure to review the plea agreement with him; (2) failure to object to errors in the PSR's sentencing guideline calculations; and (3) failure to object to the sentencing guidelines. (Doc. 10). As a result of Mr. Garcia's introduction of new arguments in his reply brief, the Court permitted the Government to file a sur-reply, which was timely filed. (Doc. 16). The Court then gave Mr. Garcia additional time to file a response to the sur-reply (Doc. 17), however, no additional briefing was submitted within the time provided.

II.    Discussion

A petition under Section 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel. 28 U.S.C. § 2255(a). *See also U.S. v. Tucker*, 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28

4

U.S.C. § 2255.").

A. *Ineffective Assistance of Counsel*

Plaintiff asserted four ineffective assistance of counsel claims in his Motion to Vacate (Doc. 1), followed by three additional ineffective assistance of counsel claims in his reply brief (Doc. 10). A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 687-88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman*, 639 F.3d 980, 1012 (10th Cir. 2011) (quotations omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir.

2001) (citing *Strickland*, 466 U.S. at 693).   The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).   *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice").   Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong.   *Id.* at 697.

       *1.   Failure to Review Discovery*

       Mr. Garcia argues his counsel was ineffective because he "did not go over the discovery in this case."   (Doc. 1) at 4.   This argument is not supported by the record.   At the change of plea hearing on July 6, 2022, the Honorable Kevin R. Sweazea, United States Magistrate Judge, conducted a plea colloquy, in which Mr. Garcia indicated he reviewed all facts related to the case and was satisfied with his attorney's representation:

| | |
|---|---|
| Court: | Have you and your attorney discussed all of the facts and circumstances of your case? |
| Defendant: | Yes, your honor. |
| Court: | Are you satisfied with the advice and representation that your attorney has provided you? |
| Defendant: | Yes, your honor.   Thank God bless her. |
| Court: | Have you had sufficient time to talk to your attorney to your satisfaction? |
| Defendant: | Yes, your honor. |

(Doc. 16-2) at 4-5.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

Here, a review of the plea colloquy evidences that Mr. Garcia reviewed the facts and circumstances of the case with his counsel and did not express concern about any evidence he or his attorney did not have the opportunity to review. The Tenth Circuit consistently "denie[s] relief under . . . § 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance when their plea colloquies demonstrated otherwise." *Holt v. Brace*, 418 Fed. App'x 697, 701 (10th Cir. 2011) (collecting Tenth Circuit cases). Mr. Garcia's counsel also submitted an affidavit indicating under oath that she "went over all plea documents with him and answered all his questions" prior to the change of plea hearing and sentencing, and "met with Mr. Garcia prior to court on July 6, 2022, to ensure he still wanted to plead guilty." (Cr. 16-1) (Gov't Ex. 1).

Further, Mr. Garcia fails to establish any prejudice from the alleged error. He has made no showing that he would have elected to forgo his guilty plea and proceed to trial if he had reviewed some unspecified discovery in this case. The Tenth Circuit has stated that it "remain[s] suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors." *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013). *See also Hatch v. Oklahoma*, 58 F.3d 1447, 1459, 1471-72 (10th Cir. 1995) (allegations

7

of ineffective assistance must be specific and particularized; conclusory allegations are insufficient and do not warrant an evidentiary hearing); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (the court is not required to "fashion [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."). In determining whether counsel's ineffectiveness was prejudicial, courts must "focus on the objective evidence" and "ask whether going to trial would have been objectively 'rational under the circumstances.'" *Id.* "Although a defendant need not show he would have prevailed at trial, his prospects of succeeding inform [the Court's] view of whether he would have gone to trial." *United States v. Triplett*, 263 Fed. Appx. 688, 690 (10th Cir. 2008) (unpublished).

The Government's case against Mr. Garcia was strong as he admitted during his interview with state investigators that he sexually molested the reporting minor victim more than 100 times when she was between the ages of 10 and 12, he readily admitted he molested a second minor victim, and a forensic examination report of his seized cell phone revealed two videos and three photographs depicting child pornography. (Cr. Doc. 1) at 4. As noted in his PSR and at the sentencing hearing, but for the plea agreement, the Government could have charged Mr. Garcia with an additional count of Production of Child Pornography, increasing the statutory maximum of his sentence from 30 years to 60 years. (Cr. Doc. 33) at 17; (Cr. Doc. 43) at 9. During the sentencing hearing, Mr. Garcia's counsel indicated she spoke with him shortly after she was appointed to this matter, and it was his desire "to wrap this up[.]" (Cr. Doc. 43) at 8. Mr. Garcia has not convinced the Court that if he had the opportunity to review some unspecified discovery, he would have elected to forgo his guilty plea and proceed to trial with

the risk that his sentence could have doubled in length.   Consequently, Mr. Garcia has

established neither deficient performance nor prejudice, and thus fails to show ineffective

assistance of counsel under *Strickland*.

        *2.   Provision of Inaccurate Sentencing Information*

    Mr. Garcia claims his counsel incorrectly told him he would receive a fifteen-year

sentence, rather than the thirty-year sentence he is currently serving.   This argument fails to hold

weight because the plea agreement, which Mr. Garcia signed and attested he understood,

indicated that the "minimum and maximum penalty the Court can impose" was "imprisonment

for a period of not less than 15 years and not more than 30 years[.]"   (Cr. Doc. 2) at 2.

    At the change of plea hearing, Magistrate Judge Sweazea expressly warned Mr. Garcia

that the maximum sentence was thirty years' incarceration, and his sentence would be solely in

the discretion of the sentencing judge:

> Government:    Your Honor, the defendant faces a mandatory minimum of 15
>                       years and up to 30 years imprisonment, not less than a five-year
>                       term of supervised release and up to life up to a $250,000 fine.   A
>                       mandatory $100 special penalty assessment, a potential additional
>                       special penalty assessment of up to $5,000 pursuant to 18 USC
>                       section 3014, an additional special penalty assessment of up to 15
>                       $50,000 pursuant to 18 USC section 2259 A and restitution as may
>                       be ordered by the court.
>
>                                       . . .
>
> Court:    And do you understand the maximum sentence that might be
>                       imposed as a result of your guilty [] plea?   Is that sentence [that]
>                       was just related to the court by the prosecutor, uh, qualified by
>                       what you and I just talked about?
>
> Defendant:    Yes, your Honor.
>
>                                       . . .

Court:          Do you understand that before the District Judge who will sentence you will be able to determine an appropriate sentence for you? The Judge must consult the United States sentencing guidelines and must consider the other factors the judge must consider pursuant to federal law?

Defendant:      Yes, your Honor.

Court:          If after consulting the United States sentencing guidelines, in considering the other factors the Judge must consider, the Judge determines to give you a sentence that is harsher or longer than the United States sentencing guidelines range, or which does not incorporate, uh, the stipulation, uh, for acceptance of the responsibility, uh, that you reached with the prosecutor or which is harsher or longer than the sentence your attorney may have estimated for you or than you think you deserve.   Do you understand that you will not be permitted to withdraw your guilty plea?

Defendant:      Yes, your Honor.

(Doc. 16-2) at 3-4, 6-7.

Mr. Garcia's counsel represented on the record, in the presence of and without objection from Mr. Garcia, that he understood the maximum sentence of thirty years:

Ms. Skinner:    Yes, your Honor.   This is a non-binding plea agreement.   My client understands that the District Court Judge could accept or reject the stipulations that are contained within this agreement. Um, and just for his benefit, your Honor, the [] sole stipulation is, uh, a reduction for acceptance of responsibility and the real main benefit to him is that the government will not pursue additional charges.   Um, so just wanted to get that out from the beginning. *He understands the rights he's, uh, giving up by pleading guilty and the charge to which he's pleading, including the mandatory minimum sentence and possible maximum, uh, penalty.*   We agree that the government could prove the elements of that offense against him and specifically agree with [] the facts as laid out in bold on page five, paragraph nine.   Uh, the only stipulation is that there should be a full reduction for acceptance of responsibility. Your Honor, he understands that he is subject, uh, to an approvable restitution, uh, that a victim in this case come forward with.   I've explained to him that my understanding of the plea agreement is

> that we're still allowed to litigate whether a requested amount is appropriate under the statute, but if the court finds that restitution is required, he understands he needs, uh, to pay that.

*Id.* at 5 (emphasis added).

On the record before the Court, it is beyond dispute that Mr. Garcia was fully advised of the consequences of pleading guilty, including that he would receive a term of imprisonment of not less than fifteen years and not more than thirty years, before he entered his guilty plea. "[C]onsidering the admonishments provided by the plea agreement and by [the Judge at the plea hearing], he cannot establish a reasonable probability that he would not have pled guilty but for any such misrepresentation." *United States v. Herrera-Hernandez*, 2007 WL 9734046, at *3 (D.N.M. June 28, 2007), *report and recommendation adopted*, 2007 WL 9733647 (D.N.M. July 31, 2007). *See also United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993) ("Given the fact that Defendant pleaded guilty even after being . . . informed by the court [that it determined the final calculation of his sentence], his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice.").

Based on the explicit terms of the plea agreement and the extensive plea colloquy, it is clear that Petitioner, prior to entering his plea, understood he had no guarantee of a fifteen-year sentence. *See United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) ("A defendant's statements at a plea hearing should be regarded as conclusive . . . in the absence of a believable, valid reason justifying departure from the apparent truth of those statements.") (internal quotation omitted).

Even if his attorney told him that he would only receive a fifteen-year sentence, "[a]

miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Gordon*, 4 F.3d at 1570. *See also United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) ("[A]n erroneous sentencing prediction is not prejudicial where the court has conducted an adequate Rule 11 colloquy."); *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) (holding that there is no prejudice from counsel's inaccurate advice "where the court cured the defect by providing the proper information"). Consequently, Mr. Garcia has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

### 3. *Failure to Review the Presentence Investigation Report*

Mr. Garcia contends his counsel was ineffective because he "did not discuss [the] PSR with [him] and did not ask [him] if [he] had objections to the PSR." (Doc. 1) at 4. Again, these contentions are directly contradicted by the record. During his sentencing, the undersigned asked Mr. Garcia, with his counsel present, whether they both reviewed the PSR:

| Court: | Okay. Did you both review the [presentence investigation] report, carefully? |
|---|---|
| Ms. Skinner: | Yes, Your Honor. |
| Court: | Okay. Do you have any objections to anything in the [presentence investigation] report, including the sentencing guideline calculations? |
| Ms. Skinner: | No, Your Honor. Our issues were resolved with the disclosure of the amended PSR. |
| Court: | Okay. |
| Ms. Skinner: | Or the second PSR. |
| Court: | Okay. No other objections? |

Ms. Skinner:   No, Your Honor.

(Cr. Doc. 43) at 4.   "Because counsel is an officer of the court, this statement was 'virtually made under oath.'"   *United States v. Campos*, 2007 WL 9734048, at *3 (D.N.M. June 26, 2007) (discussing how the court treats a statement by a defendant's attorney at a sentencing hearing confirming he reviewed the PSR with his client) (quoting *United States v. Deberry*, 430 F.3d 1294, 1300 (10th Cir. 2005)).   Notably, Mr. Garcia did not contest his attorney's statement or inform the Court that his attorney was being untruthful in her response.   A petitioner's bare allegation that his counsel failed to adequately explain his PSR is insufficient to refute his sworn statement to the contrary.   *See e.g., United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005).

Further, the Sentencing Memorandum submitted by Mr. Garcia's attorney after the second PSR was filed reflects that any potential objections were addressed.   Within that Sentencing Memorandum, Mr. Garcia's attorney expressly states: "The [second] PSR corrected the guideline calculation and resolved other issues discussed between the parties."   (Cr. Doc. 36) at 1.   Other than Mr. Garcia's conclusory allegation, he does not describe what other objections he believes his attorney should have made or how her failure to object fell below an objective standard of reasonableness.

Even assuming Mr. Garcia made a sufficient showing of deficient performance, he fails to establish prejudice.   That is, he fails to show that the outcome of his sentence would have been different had Mr. Garcia objected to some unidentified portion of the PSR.   As the undersigned noted at the sentencing hearing, the sentencing guidelines were correctly calculated in the PSR, and the sentence reflects those guidelines and the repetitiveness of Mr. Garcia's

actions upon the minor child:

> Court:    Okay.   So I'll accept the plea agreement that you have with the United
> States.   I'm also adopting all the factual findings, as disturbing as they
> may be, from the presentence report as the Court's own.   Now, I am
> bound to consider the sentencing guidelines, which I have done.   And
> they are correctly calculated at an offense level of 42.   Your criminal
> history category is 1; therefore, the range is 360 months, capped by the
> statutory maximum of 30 years.   Now, I am finding that you did
> produce child pornography depicting yourself performing sexually
> explicit conduct to a naked 12-year-old minor female victim who was
> your adopted daughter.   Additionally, statements that you provided –
> that were provided by the victim indicate that the abuse occurred more
> than 100 times beginning at her age of 10.   And, lastly, the Court notes
> that you are a repeat and dangerous sex offender against minors.
>
> So, Mr. Rodriguez Garcia, it's the judgment of this Court, having
> considered all the arguments of Ms. Skinner, Ms. Villalobos, the
> guideline applications, considering your history, the need to promote
> respect for the law and the need to protect the public, among all factors
> I've considered, it's the judgment of this Court that you be sentenced to
> a term in the Bureau of Prisons of 30 years.   Now, you will receive
> credit for time you have spent in custody so far.
>
> . . .
>
> Now, I did consider how people might age out of criminal activity, a life
> of crime.   I do see this somewhat different than an offense of drug
> trafficking or possession of guns.   And, therefore, that's one of the
> reasons I'm imposing the 30-year sentence.   I'm finding that 30 years is
> enough to protect the public.

(Cr. Doc. 43) at 25.

Consequently, Mr. Garcia has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

> 4.    *Failure to Object to the Government's Recommendation of a 30-Year Sentence*

Mr. Garcia asserts that his counsel provided ineffective assistance because she failed to object to the Government's request for a 30-year sentence.   The Court must reject this argument because Mr. Garcia is plainly mistaken.

14

First, the record shows his counsel filed a Sentencing Memorandum expressly asking the Court for a below-guideline sentence.   (Cr. Doc. 36).   Within the Sentencing Memorandum, his counsel asked the Court to consider the fact that Mr. Garcia was also a victim of sexual abuse. His counsel also reasoned that if he was sentenced to the 15-year minimum, he would be in his fifties by the time he was released, and it would be more likely that he aged out of criminal behavior.   Further, his counsel argued that his conditions of supervised release would work to keep him from being a repeat offender.

At the sentencing hearing, Mr. Garcia's counsel repeated the same arguments from the Sentencing Memorandum and zealously argued for a reduced sentence.   (Cr. Doc. 43).   His counsel discussed his "status as an abuse victim himself," his "need for treatment," and "his age now and how that would interact with" a longer sentence.   *Id.* at 6-7.   She also reminded the Court that Mr. Garcia was "forthcoming and admitted the conduct when confronted."   *Id.* at 8. After the Government argued for a 30-year sentence, Mr. Garcia's counsel asked for an opportunity to respond, which the Court permitted.   *Id.* at 18-19.   She again asked for the imposition of a below guideline sentence and encouraged the Court to consider the fact that a shorter sentence could be appropriate "in light of the treatment and rehabilitation that would be required of [Mr. Garcia] upon release."   *Id.* at 20.

Self-serving factual allegations that are contradicted by the record and are inherently incredible, do not entitle a Section 2255 movant to relief.   *See United States v. Mascheroni*, 2017 WL 4997977, at *6 (D.N.M. Oct. 31, 2017).   Because the record clearly illustrates that trial counsel expressly argued for a sentence below the guidelines, Mr. Garcia cannot establish that his counsel's performance "fell below an objective standard of reasonableness," and cannot

prevail on his ineffective assistance claim.  *See Strickland*, 466 U.S. at 688.

     *5.  Failure to Review the Plea Agreement*

     Mr. Garcia contends his attorney failed to review the plea agreement with him.   (Doc. 10).   He claims he "was given the Plea Agreement by an officer of the county jail and told to sign it" and "did not meet in person with his attorney until the sentencing hearing."   *Id.* at 1-2.  Once again, Mr. Garcia's contentions are directly contradicted by the record.

     First, Petitioner cannot show that counsel's performance was deficient.  *Id.*   When the Court questioned Mr. Garcia during the change of plea hearing as to whether he was given the opportunity to review the plea agreement with his attorney, Mr. Garcia answered in the affirmative:

| | |
|---|---|
| Court: | Your attorney has given the court a written plea agreement on the last page of that document above your [] typewritten name.   There appears to be a signature.   Was the plea agreement read to you? Did you discuss it with your attorney and then did you sign it? |
| Defendant: | Yes, your Honor. |
| Court: | Before you signed the plea agreement, did your attorney explain all of the terms and conditions of it to you to your satisfaction? |
| Defendant: | Yes, your Honor. |
| Court: | Before you signed the plea agreement, did your attorney answer any questions you had about the plea agreement for you to your satisfaction? |
| Defendant: | Yes, your Honor. |
| Court: | Are there any other questions you would like to ask your attorney about the plea agreement before we proceed to consider it further[]? |
| Defendant: | Not at this moment, your Honor. |

| Court: | Are you confident that you understand all of the terms and conditions of the plea agreement? |
|---|---|
| Defendant: | Yes, your Honor. |

(Doc. 16-2) at 4-5.

Mr. Garcia's above stated answers are supported by the paragraph above his signature on

the plea agreement which provides:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in l8 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, elements of the offense, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(Cr. Doc. 25) at 15.

Additionally, Mr. Garcia's attorney also submitted a sworn affidavit in which she

indicated the date she reviewed the plea agreement with him and confirmed that he was sent the

documents prior to the change of plea hearing:

> Mr. Garcia consented to an extension of the grand jury deadline in May 2022 to allow us to continue negotiating a plea offer. We received the offer at some point in June 2022. I set a jail call on June 24, 2022, to discuss the plea offer with Mr. Garcia. The jail did not answer, so we rescheduled the call for June 28, 2022. Mr. Garcia and I spoke about the offer. Mr. Garcia wanted to take the offer, so I went over all plea documents with him and answered all his questions. My legal assistant emailed the plea documents to the jail on the same day so Mr. Garcia could sign them. We filed a Notice of Intent to Plead Guilty on June 29, 2022. I also met with Mr. Garcia prior to court on July 6, 2022, to ensure he still wanted to plead guilty. He did, and we completed the change of plea hearing on July 6, 2022.

(Doc. 16-1) at 1.

Although an allegation of fact must ordinarily be accepted as true, it is not required where

17

. . . the allegation is contradicted by the files and records before the court." *Runge v. United States*, 427 F.2d 122, 126 (10th Cir. 1970). *See also Lemaster*, 403 F.3d at 221-22 (indicating that, absent "extraordinary circumstances," allegations in a § 2255 motion that directly contradict the petitioner's prior sworn statements are considered "patently frivolous or false"). Here, the record reflects that his attorney did review the plea agreement with him before he pleaded guilty.

To the extent Plaintiff is arguing his attorney was deficient for failing to meet with him in person prior to the plea hearing, not only does the record refute such an allegation, but it would also not constitute ineffective assistance of counsel. *See e.g.*, *United States v. Benavidez*, 2006 WL 8444231, at *4 (D.N.M. May 22, 2006) (finding that because counsel and defendant were able to speak a couple of times by telephone, the lack of communication was not so great as to render the representation per se ineffective); *Kerman v. United States*, 166 F.3d 1214 (6th Cir. 1998) (no ineffective assistance of counsel when client and counsel did not meet in person but communicated through other means); *Kienlen v. United States*, 2012 WL 13093872, at *5 (D. Wyo. Jan. 31, 2012) (effective representation does not require in person contact in cases with very little factual dispute).

Further, even if the Court assumed that counsel's performance was deficient, Mr. Garcia fails to meet the second prong of the *Strickland* test. *Id.* Petitioner does not assert in his Motion that but for counsel's errors he would not have pleaded guilty. *Lockhart*, 474 U.S. at 58. As such, Mr. Garcia's claim of ineffective assistance of counsel is without merit.

> 6. *Failure to Object to the Sentencing Guideline Calculations in the PSR and at the Sentencing Hearing*

In his last two grounds for error, Mr. Garcia argues his counsel was ineffective for failing "to object to the sentencing guideline in the PSR and at sentencing." (Doc. 10) at 1. He argues

he should have been sentenced pursuant to "a Level 35 and Criminal History Category 1," which would have put him at a guideline range of 168 to 210 months with a statutory minimum of 180 months.  *Id.* at 5.   While he agrees his base level appropriately started at 32, he contends he should have only been subject to the following increases: a 2-level increase for producing a sexually explicit video involving a twelve-year old minor, a 2-level increase for sexual contact, and a 2-level increase for his familial relationship to the minor.  *Id.* at 2-3.   Thus, he reasons he should have been sentenced at an offense level of 38 with a 3-point reduction for acceptance of responsibility.  *Id.* at 2.   He believes the Court erroneously attached a 4-point increase for the age of the victim.   He also argues his counsel should have objected to guideline increases pursuant to USSG §2.1(b)(2), §2.1(b)(3), §2.1(b)(4) and §2.1(b)(6), however, neither the PSR nor the Court applied any such increases.

The amended PSR provided the following offense level computation for Mr. Garcia's production of child pornography charge:

24.   Base Offense Level: The guideline for a violation of 18 U.S.C. § 2251(a) is USSG §2G2.1. The base offense level is 32. USSG §2G2.1(a).   **32**

25.   Specific Offense Characteristics: The offense involved a minor who had not attained the age of 12 years, warranting a four-level increase under USSG §2G2.1(b)(1)(A).   **+4**

26.   Specific Offense Characteristics: The offense involved the commission of a sexual act or sexual contact, warranting a two-level increase under 2G2.1(b)(2)(A).   **+2**

27.   Specific Offense Characteristics: The defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise I the custody, care, or supervisory control of the defendant, warranting a two-level increase under 2G2.1(b)(5).   **+2**

28.   Victim Related Adjustment: None.   **0**

29.     Adjustment for Role in the Offense: None.                                                **0**

30.     Adjustment for Obstruction of Justice: None.                                         **0**

31.     Adjusted Offense Level (Subtotal):                                                          **40**

32.     Chapter Four Enhancement: The offense of conviction is a covered sex crime, neither §4B1.1 (Career Offender) nor subsection (a) of §4B1.5 applies and the defendant engaged in a pattern of activity involving prohibited sexual conduct. Therefore, the defendant is a repeat and dangerous sex offender against minors. The offense level shall be 5 plus the offense level determined under Chapters Two and Three. In this case the applicable offense level is 45. USSG §4B1.5(b)(1).     **45**

33.     Acceptance of Responsibility: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).     **-2**

34.     Acceptance of Responsibility: The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). **-1**

35.     Total Offense Level: Pursuant to Chapter 5, Part A (comment n.2), in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.     **42**

(Cr. Doc. 33) at 7-8.

The Court cannot find that counsel's performance was deficient for not objecting to the 4-point increase for the age of the victim.   Although Mr. Garcia admitted the victim was twelve years old when he produced the sexually explicit video, the amended PSR indicated "he touched her vagina more than 100 times between the ages of 10 and 12."   (Cr. Doc. 33) at 6.   At his sentencing, the Court explicitly addressed the age of the victim when the abuse started:

Court:          Okay. So I'll accept the plea agreement that you have with the United States. I'm also adopting all the factual findings, as disturbing as they may be, from the presentence report as the Court's own.

20

> *Now, I am bound to consider the sentencing guidelines, which I have done. And they are correctly calculated at an offense level of 42.* Your criminal history category is 1; therefore, the range is 360 months, capped by the statutory maximum of 30 years.
>
> Now, I am finding that you did produce child pornography depicting yourself performing sexually explicit conduct to a naked 12-year-old minor female victim who was your adopted daughter. *Additionally, statements that you provided -- that were provided by the victim indicate that the abuse occurred more than 100 times beginning at her age of 10. And, lastly, the Court notes that you are a repeat and dangerous sex offender against minors.*

(Cr. Doc. 43) at 25 (emphasis added).   It was, therefore, appropriate for the Court to apply a 4-point increase, rather than a 2-point increase, pursuant to USSG §2G2.1(b)(1)(A) because Mr. Garcia's conduct had involved a minor who had not attained the age of 12 years.   As the Government highlighted in its response, the Court can consider "all acts… undertaken by the defendant… in furtherance of the criminal activity and reasonably foreseeable in connection with that criminal activity."   (Doc. 16) at 7 (quoting USSG §1B1.3(a)(1)(B)).

Further, Mr. Garcia is mistaken as to his argument regarding the Court's failure to deduct for acceptance of responsibility because it is clear from the sentencing hearing that the Court followed the PSR's calculations and subtracted three points for acceptance of responsibility. Lastly, the Court cannot find that counsel's performance was deficient in objecting to guideline increases pursuant to USSG §2.1(b)(2), §2.1(b)(3), §2.1(b)(4) and §2.1(b)(6) because neither the PSR nor the Court applied any such increases.

In sum, the objections he argues his attorney should have made would have been meritless.   *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that the failure to raise a meritless objection is not ineffective assistance of counsel); *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("If [an] omitted issue is without merit, then counsel's failure

to raise it is not prejudicial, and thus is not ineffective assistance.").   Because it is well established that the failure to make a frivolous or meritless objection cannot constitute ineffective assistance of counsel, his counsel was not ineffective for failing to make the sentencing guideline objections.

Mr. Garcia also argues he was prejudiced by his counsel's statement at his sentencing hearing when she said: "You know, I think both of our offices tend to sort of assign the same people to certain types of cases, and myself and a few other attorneys from our office seem to be the individuals that, you know, continue to receive cases like this."   (Doc. 10) at 6 (citing Cr. Doc. 10) at 7-8.   The Court cannot find error.   His counsel was simply acknowledging her experience in handling cases similar to Mr. Garcia's while asking for below guideline sentence. After making the above statement, she then said:

> Ms. Skinner:    And one thing that is -- that can be difficult when discussing things with a client in terms of, you know, whether or not they're going to accept a plea offer is to try to balance their expectations when, like in Mr. Garcia's case, they were forthcoming and admitted the conduct when confronted. I think that, respectfully, is something that the Court could and should consider. With the statutory maximum being 30 years, Mr. Garcia certainly could have pushed more on this case. But I spoke with him, and spoke with Mr. Lilley shortly after I was appointed, and both told me the same thing; he wanted to wrap this up. He was willing to plead in the state case, and I think that is evidenced by information he gave to law enforcement when confronted. So our request for below-guideline sentence, Your Honor, really is based on 3553(a), specifically his age and his need for treatment.

(Cr. Doc. 43) at 8.   Clearly, Mr. Garcia's counsel was attempting to show how his response to the charges was different than other defendants facing similar charges because he was "forthcoming and admitted the conduct when confronted" and accepted a plea offer.

Mr. Garcia's allegations fail to factually demonstrate that the performance of his attorney

was deficient. *See Strickland*, 466 U.S. at 687-88.   His generalized statement that he was "prejudiced by [] counsel's unprofessional performance" does not show a reasonable probability that, but for counsel's alleged unprofessional statement, the result of the proceeding would have been different.   *Id.* at 694.   He does not allege, much less factually support, the likelihood of a different result in his sentencing.

      B.  *Prosecutorial Misconduct*

      Mr. Garcia contends that the Government violated the terms of his plea agreement because "the prosecutor agreed to request a 15[-]year sentence."   (Doc. 1) at 5.   The Government asks the Court to summarily deny this claim as barred by the collateral attack waiver in his plea agreement. In the section the agreement, titled "Waiver of Appeal" rights, it states:

> The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal the defendant's conviction and any sentence, including any fine, at or under the maximum statutory penalty authorized by law, as well as any order of restitution entered by the Court.   The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(l)(A) where such denial rests in any part upon the court's determination that "extraordinary and compelling reasons" for a sentence reduction are lacking or that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).   *In addition, the defendant agrees to waive any collateral attack to the defendant's conviction and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance.*

(Cr. Doc. 25) at 11-12 (emphasis added).

      A petitioner's waiver of the right to collaterally attack his convictions and sentence in a plea agreement is generally enforceable.  *United States v. Cockerham*, 237 F.3d 1179, 1181-83 (10th Cir. 2001).   When a petitioner waives the right to collaterally attack his or her sentence in a plea agreement but later files a motion pursuant to Section 2255, the Court must determine (1)

whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice.   *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights").   The Court must "strictly construe[]" the scope of the waiver, and "any ambiguities . . . will be read against the Government and in favor of" the petitioner's right to collateral review. *Id.* (citation omitted).

First, Mr. Garcia's claims fall squarely within the scope of the collateral attack waiver. The plea agreement states, "the defendant agrees to waive any collateral attack to the defendant's conviction and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance."   (Cr. Doc. 25 at 12). The prosecutorial misconduct claim is brought pursuant to § 2255 and is a collateral attack on his conviction and sentence.

Second, the plea agreement and plea colloquy demonstrate Mr. Garcia knowingly and voluntarily waived his right to collateral review.   To determine whether a waiver of collateral review is knowing and voluntary, the Court looks primarily at two factors: (1) whether the plea agreement itself states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate colloquy under Rule 11 of the Federal Rules of Criminal Procedure.   *Hahn*, 359 F.3d at 1325.   The plea agreement itself expressly stated the nature of the waiver; contained a clear section in which Mr. Garcia agreed that the plea was made freely and

24

voluntarily; and included a statement above his signature that he understood the terms of the agreement, including the relevant sentencing guidelines and voluntarily agreed to those terms. (Cr. Doc. 25) at 11-12, 15.   At the change of plea hearing, Mr. Garcia confirmed under oath that no one forced, threatened, or made any promises to get him to sign the plea agreement and understood he was waiving his right to appeal.   (Doc. 16-2 at 1, 7).   The Court also had the Government recite the minimum and maximum statutory penalties he was facing, and Mr. Garcia testified he understood what those penalties were.   *Id.* at 3-4.   The Court made sure he understood that the District Judge, after considering the Sentencing Guidelines, could impose a sentence that was "harsher or longer" than what he or his attorney was expecting or hoping.   *See id.* at 7.   The Magistrate Judge accepted his plea, finding he was "competent and capable" of entering into an informed plea and aware of the nature and consequences of his plea.   *Id.* at 9.

Third, Mr. Garcia has not met his burden of establishing a miscarriage of justice.   "[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'"   *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("*Miscarriage of justice* . . . has a narrow meaning" in the context of an appellate waiver.).   Mr. Garcia does not assert, and the Court cannot find, that any of these situations occurred in this case.   As such, his prosecutorial misconduct claim is barred by the plea agreement's collateral attack waiver.

Alternatively, even if the Court found the waiver to not apply, this claim would still fail.

"Where the Government obtains a guilty plea [that] is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea." *United States v. Bullcoming*, 579 F.3d 1200, 1205 (10th Cir. 2009) (citation omitted).   To determine the nature of any promises made by the government as well as the defendant's reasonable understanding of such promises, courts "look to the express language in the agreement" and "evaluate the record as a whole." *Id.*   Applying general principles of contractual interpretation, courts "construe any ambiguities against the government as the drafter of the agreement." *Id.*

The Court has meticulously reviewed the plea agreement and finds no reference to the agreement of a fifteen-year sentence.   To the contrary, it clearly and explicitly indicated the minimum and maximum penalty as fifteen to thirty years and included language confirming that the parties "recognize that the Sentencing Guidelines are advisory[.]"   (Cr. Doc. 25) at 2-3. Most significantly, the plea agreement indicated that the "United States has made, and will make, NO AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentence is the appropriate disposition of this case" and "has made, and will make, NO AGREEMENT to approve, to oppose, or to not oppose . . . any request made by the defendant or on behalf of the defendant for a particular sentence in this case[.]"   *Id.* at 4 (emphasis in original).   Further, at the change of plea hearing, the Magistrate Judge expressly warned Mr. Garcia that the maximum sentence was thirty years' incarceration, and his sentence would be solely in the discretion of the sentencing judge.   (Cr. Doc. 16-2) at 3-4, 6-7.   This evidence shows that Mr. Garcia could not have reasonably understood that he had been promised a 15-year sentence by the Government.   Consequently, this claim fails on its merits.

C.  *Evidentiary Hearing*

Courts shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required.  *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations").  For the reasons discussed above, the Court finds that the record is sufficient to dispose of each of Mr. Garcia's allegations of ineffective assistance of counsel and prosecutorial misconduct, and his allegations do not warrant a hearing.

D.  *Certificate of Appealability*

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Mr. Garcia's Section 2255 motion and, therefore, a certificate of appealability will be denied.

27

IT IS ORDERED:

1.  Petitioner Guillermo Rodriguez Garcia's Motion to Vacate, Set Aside, or Correct

    Sentence Under 28 U.S.C. § 2255 (Doc. 1; Cr. Doc. 40) is denied with prejudice.

2.  A certificate of appealability is denied.

3.  The Court will enter a separate judgment closing the civil habeas case.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been
  electronically filed. To verify its
  authenticity, please refer to the Digital File
  Stamp on the NEF (Notice of Electronic
  Filing) accompanying this document.
  Electronically filed documents can be found
  on the Court's PACER public access
  system.